WOLF, J.
Appellant/Cross-Appellee, Marc Baker, represents a class of individuals who had hospital hens asserted against them in Es-cambia County by Appellee/Cross-Appel-lant, Baptist Hospital, Inc. (Baptist), pursuant to chapter 80783, Laws of Florida (1955), on or after October 21, 2006, for medical care which they received at certain hospitals located in Santa Rosa County, and such liens had not been satisfied through payment from any source.[1]
Baker argued below that Baptist’s practice of filing hospital liens in Escambia County for care rendered in Santa Rosa County was not authorized by chapter 30733 (a special law specific to Escambia County). Further, Baker argued, the practice was an “unfair and deceptive” practice in the conduct of “trade or commerce” and, as such, unlawful pursuant to the Florida Deceptive and Unfair Trade Practices Act, Part II, chapter 501, Florida Statutes (FDUTPA).
On a motion for summary judgment, the trial court determined that Baptist’s practice of filing liens in Escambia County for care rendered in Santa Rosa County was not authorized by chapter 30733, directed Baptist to lift any such liens and enjoined Baptist from filing such liens in the future. The trial court did not, however, agree that the act of filing a hospital lien met the definition of “trade or commerce” such that the practice was subject to FDUTPA.[2] The trial court determined that the practice was a form of debt collection, not vrithin the definition of “trade or commerce,” and not subject to FDUTPA. Baker appeals this determination. We affirm because the pursuit of legal remedies, such as filing a lien, does not fall within the definition of “trade or commerce.” It is therefore unnecessary to reach the broader question of whether debt collection practices in general constitute “trade or commerce.” We also affirm, without comment, the issue raised on cross-appeal.
The Legislature enacted FDUTPA “[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.” § 501.202(2), Fla. Stat. (2010). The act declares unlawful “[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.” § 501.204(1), Fla. Stat. (2010). “Trade or commerce” is defined as:
[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. “Trade or commerce” shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.
§ 501.203(8), Fla. Stat. (2010). Baker urges this court to find that the filing of the hospital lien is within the definition of “trade or commerce” because the lien involves a debt that arose from a direct *1125 commercial relationship, i.e., the provision of medical care services.
At least one district court seems to suggest that debt collection by the party that extends credit may be subject to FDUT-PA. In Schauer v. General Motors Acceptance Corp., 819 So.2d 809 (Fla. 4th DCA 2002), a plaintiff had properly stated a cause of action against GMAC under FDUTPA sufficient to survive a motion to dismiss apparently because GMAC extended the credit which enabled the plaintiff to purchase the car and then allegedly violated the act by willfully harassing the plaintiff with respect to the collection of its debt. The plaintiff also connected the seller with GMAC through agency allegations. In other words, there appeared to be a “trade or commerce” relationship between GMAC and the plaintiff before GMAC attempted to collect the debt through means unconnected to the legal process.[3] The case at hand, however, involves a hospital lien, not the extension of commercial credit or general collection practices unconnected to the legal process.
We decline to join the trial court and do not classify the filing of a statutory hospital lien as “debt collection.” [4] While it may certainly be a step in eventually obtaining payment on a debt, the filing of the lien does not itself make demand for payment. Much like the filing of a mortgage and note, the recorded hospital lien puts parties on notice of the lienor’s secured interest and is part of the exercise of legal remedies.
We agree with the Fourth District Court of Appeal that the pursuit of legal remedies does not fall within the definition of “trade or commerce.” State, Office of Atty. Gen. v. Shapiro & Fishman, LLP, 59 So.3d 353 (Fla. 4th DCA 2011) (finding law firm allegedly fabricating false documents for use in foreclosure cases was not engaged in trade or commerce for purposes of FDUTPA). See also, Kelly v. Palmer, Reifler, & Assocs., P.A., 681 F.Supp.2d 1356, 1375 (S.D.Fla.2010) (holding that law firm’s issuance of pre-suit demand letters did not constitute “trade or commerce” and noting that law firm’s “acts — conduct ostensibly occurring during the exercise of a legal remedy — had zero connection whatsoever to any 'trade or commerce’”), and Trent v. Mortgage Elec. Registration Sys., Inc., 618 F.Supp.2d 1356 (M.D.Fla.2007) (finding mortgage lender’s successor was not engaged in trade or commerce for purposes of FDUTPA when it sent pre-suit demand letters and foreclosed on mortgages). In this case, we find that the *1126 filing of a hospital lien is the pursuit of a legal remedy and, thus, not within the definition of “trade or commerce.”
Baker would also have this court classify the filing of a hospital lien as a “billing practice” because billing practices are considered part of “trade or commerce.” See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm., Inc., 642 F.Supp.2d 1318 (M.D.Fla.2009) (finding “bill” sent by utility to excavator for repair of underground cable, that did not disclose corporate overhead and claims processing charges, was in “trade and commerce,” as required for claim under FDUTPA). Baker’s argument fails to consider the meaning of the verb “to bill,” which is “to present a statement of costs or charges to.” American Heritage Dictionary 131 (New Collage Ed. 1979). A “bill” is essentially one means by which a party communicates its determination of the amount of money to be paid in return for goods or services tendered. This communication is integral to the bargained-for exchange in a trade or commercial relationship.
In contrast, a lien is a “legal right or interest that a creditor has in another’s property, lasting usu[ally] until a debt or duty that it secures is satisfied.” Black’s Law Dictionary 941 (8th ed. 2004). In other words, a bill is a mere claim of a right to be paid and a lien is a securing of the right to be paid. A securing of the legal right to be paid is not essential to the trade or commercial relationship-as evidenced by the myriad of daily commercial transactions the bills for which are paid in the absence of a lien.
We find that the filing of a hospital lien does not meet the definition of “trade or commerce” for purposes of chapter 501, Part II, Florida Statutes, and AFFIRM the trial court’s order in this case.
OSTERHAUS, J., and SHEFFIELD, FRANK E., Associate Judge, concur.

.- This court previously affirmed certification of the class represented by Baker. Baptist Hosp., Inc. v. Baker, 84 So.3d 1200 (Fla. 1st DCA 2012).

. Because the trial court determined that the filing of a hospital lien was not subject to FDUTPA, it did not reach the question of whether the act of filing a lien in Escambia County for care rendered in Santa Rosa County was "unfair and deceptive.” We, also, do not reach the question in this context.

. To the extent certain federal cases also assume "debt collection” is subject to the Federal Trade Commission (FTC) Act, as in F.T.C. v. Check Investors, Inc., 502 F.3d 159, 166-67 (3d Cir.2007) and Trans World Accounts, Inc. v. F.T. C., 594 F.2d 212, 214 (9th Cir.1979), those cases involve the demand for payment, not the securing of a right to be paid, and should not be applied to the facts of the case at hand. We note that while subsection 501.204(2) directs that subsection 501.204(1) should be interpreted consistently with the federal interpretations of 15 U.S.C. § 45(a)(1), the FTC Act declares unlawful "unfair and deceptive practices in or affecting commerce.” This declaration is much broader than FDUTPA's prohibition of “unfair or deceptive acts or practices in the conduct of any trade or commerce.” The broad language in the federal act appears to be a reflection of the federal government's long reach under the commerce clause. See, e.g., Wickard v. Filburn, 317 U.S. 111, 124, 63 S.Ct. 82, 87 L.Ed. 122 (1942). We need not, however, reach the question of whether debt collection practices are subject to FDUTPA given our conclusion that the practice at issue in this case is not a debt collection practice.

. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.”).